IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Crim. No. 12-70 |
| | ) Civ. A. No. 16-1484 |
| JAN MICHAEL EDMONDS, | ) Judge Nora Barry Fischer |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter is before the Court on a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 ("Motion") filed by *pro se* Defendant Jan Michael Edmonds ("Defendant"), (Docket No. 98), and Brief in Support, (Docket No. 99), which is opposed by the Government, (Docket No. 102). After careful consideration of the parties' arguments, and for the following reasons, the Court will enforce the valid collateral attack waiver contained in Defendant's plea agreement as doing so would not amount to a miscarriage of justice and also holds, in the alternative, that it would deny Defendant's Motion on the merits if his claim was not otherwise barred. Accordingly, Defendant's § 2255 Motion [98] is denied.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A federal grand jury returned a two count Indictment against Defendant on March 21, 2012, charging him with one count of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count One) and one count of possession of a stolen firearm in violation of 18 U.S.C. § 922(j) (Count Two). (Docket No. 1). As to Count One, the Indictment specifically alleged that Defendant "knowingly possessed in and affecting

1

interstate commerce a .40 caliber Glock pistol . . . and one extended magazine containing 21 rounds of .40 caliber ammunition[,] [i]n violation of Title 18, United States Code, Sections 922(g)(1) and 924(e)." (*Id.*). At his request, Defendant was appointed counsel under the Criminal Justice Act, i.e., Assistant Public Defender Marketa Sims, of the Office of the Federal Public Defender for the Western District of Pennsylvania. (Docket Nos. 12, 13, 16). The parties proceeded to litigate a contested pretrial suppression motion filed by Defendant which the Court granted, in part, and denied, in part, in a Memorandum Opinion dated November 12, 2013. (Docket No. 52). To this end, the Court denied Defendant's motion to suppress the firearm he was charged with possessing in the Indictment but granted his motion to suppress statements he made to law enforcement admitting that he did not have a permit to carry the firearm in question. (*Id.*). Thereafter, the parties advised the Court that they had reached a plea agreement resolving the matter short of trial. (Docket No. 58).

Defendant subsequently appeared before this Court for a change-of-plea proceeding on December 19, 2013 and after conducting an extensive colloquy to confirm that Defendant was competent, understood the Constitutional and other rights that he was waiving by entering a guilty plea, and was knowingly and voluntarily pleading guilty, the Court accepted his guilty plea to Count One. (Docket No. 72). During the proceeding, the Court was presented with a fully executed plea agreement signed by the parties, including Defendant and his counsel. (*Id.*). The Court addressed the terms of the plea agreement directly with Defendant, who assented, under oath, that: he had discussed all relevant matters pertaining to the plea agreement with his counsel; and, he was knowingly and voluntarily accepting the terms of the plea agreement and the waivers contained therein, including waiving his right to appeal the judgment and sentence to the Court of

Appeals, except with respect to the Court's suppression ruling and whether the enhancement under the Armed Career Criminal Act ("ACCA") applied in his case. (*Id.*). The Court also confirmed that Defendant knowingly and voluntarily agreed to waive the right to collaterally attack his sentence by filing a motion to vacate with this Court. (*Id.*).

As part of the presentence process, Defendant objected to the Probation Office's conclusion that the sentencing enhancement under ACCA was applicable and that he was subject to the corresponding mandatory minimum penalty of 15 years and up to a term of life imprisonment. (Docket No. 70). The Court overruled his objections to same for reasons set forth fully in its Tentative Findings and Rulings of April 7, 2014. (Docket No. 77). The Court's rationale included that because Defendant had 6 prior convictions under Pennsylvania law for possession with intent to distribute, the Court was bound by the Court of Appeals' precedential decision in *United States v. Abbott*, 748 F.3d 154 (3d Cir. 2014), holding that the Pennsylvania offense of possession with intent to distribute is "divisible" and that the "modified categorical approach" must be applied to determine if a prior conviction for possession with intent to distribute constitutes a predicate offense under the ACCA. (*Id.*). Following this precedent, the Court agreed with the Probation Office that the ACCA enhancement was appropriately applied in Defendant's case and because of the mandatory minimum penalty, Defendant's advisory guidelines range was 180 to 210 months' incarceration.[1] (*Id.*). At the sentencing hearing on April 23, 2014, Defendant was sentenced to 180 months' incarceration; 5 years' supervised release; and a $100.00 special assessment. (Docket No. 81). Hence, Defendant received the mandatory minimum penalty for this offense.

---

[1] The Court notes that without the mandatory minimum penalty, the advisory guidelines range otherwise would have been 168 to 210 months' incarceration based on a total offense level of 30 and a criminal history category of VI.

With the assistance of appellate counsel from the Federal Public Defender's Office, Defendant appealed his conviction and sentence, raising the issues that he had expressly preserved in his plea agreement. *See United States v. Edmonds*, 606 F. App'x 656 (3d Cir. 2015). This Court's judgment and sentence was affirmed by the Court of Appeals in a Memorandum Opinion dated April 15, 2015. *Id.* Defendant petitioned the Supreme Court for a writ of certiorari, but such petition was denied on October 5, 2015. *See Edmonds v. United States*, 136 S. Ct. 213 (2015).

Defendant filed his *pro se* Motion and supporting Brief on September 28, 2016. (Docket Nos. 98; 99). The Court issued an Order on September 29, 2016 advising Defendant of his right to elect if the Court should resolve the pending motion or if he wished to file an all-inclusive § 2255 motion within 30 days. (Docket No. 100). Defendant did not respond to same and the Court ordered the Government to file its Response in Opposition, which was filed on December 5, 2016. (Docket No. 102). No further briefing has been ordered by the Court nor requested by the parties. The official transcripts of the December 19, 2013 change-of-plea hearing and April 23, 2014 sentencing hearing are filed of record and were considered by the Court. (Docket Nos. 72; 87). Hence, this matter is now ripe for review.

### III. STANDARD OF REVIEW

A prisoner in federal custody may move to vacate his or her sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "A prisoner seeking relief on the grounds of ineffective assistance of counsel bears the burden to demonstrate two requirements," *United States v. Seeley*, 574 F. App'x 75, 78 (3d Cir. 2014), which were initially set forth by the Supreme Court of the United

States in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffective assistance of counsel under *Strickland*, a defendant "must establish that (1) the performance of counsel fell below an objective standard of reasonableness; and, (2) counsel's deficient performance prejudiced the defense." *United States v. Otero*, 502 F.3d 331, 334 (3d Cir. 2007) (citing *Strickland*, 466 U.S. at 688, 694); *see also Roe v. Flores–Ortega*, 528 U.S. 470, 476–477 (2000) (citing *Strickland*, 466 U.S. at 688, 694) (same). The United States Court of Appeals for the Third Circuit has "endorsed the practical suggestion in *Strickland* [that the Court may] consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008) (quoting *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005), which quoted *United States v. McCoy*, 410 F.3d 124, 132 n. 6 (3d Cir. 2005)); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Generally, a district court must order an evidentiary hearing in a federal habeas case if a criminal defendant's § 2255 allegations raise an issue of material fact. *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992). But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing. *United States v. Costanzo*, 625 F.2d 465, 470 (3d Cir. 1980); *see also Lilly*, 536 F.3d at 195. If a hearing is not held, the district judge must accept the criminal defendant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984). Similarly, "vague and conclusory allegations contained in a § 2255

5

petition may be disposed of without further investigation." *United States v. Knight*, 2009 WL 275596, at *13 (W.D. Pa. 2009) (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)).

## IV. DISCUSSION

The Court initially turns to the threshold issue raised by the Government which advocates that the Court should enforce the collateral attack waiver in the parties' plea agreement and deny Defendant's § 2255 Motion. (Docket No. 102). It is well-settled that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (citations omitted). The United States Court of Appeals for the Third Circuit has repeatedly held that a criminal defendant may effectively waive the right to file a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 in a plea agreement with the government. *Mabry*, 536 F.3d at 241; *see also United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001) ("The ability to waive statutory rights . . . logically flows from the ability to waive constitutional rights."); *United States v. Fazio*, 795 F.3d 421, 425 (3d Cir. 2015) ("we will enforce appellate or collateral-attack waivers when they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice."). If the waiver is effective, a criminal defendant is jurisdictionally barred from pursuing habeas relief. *Mabry*, 536 F.3d at 242.

In reaching this decision, the district court must examine "the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." *Id.* at 237. A criminal defendant has the initial burden "of presenting an argument that would render his waiver unknowing or involuntary" but the district

6

court has "an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Id*. at 237-38 (citing *Khattak*, 273 F.3d at 563).

### A. Knowing and Voluntary Nature of the Plea Agreement

At the outset of Defendant's change of plea hearing, the Court established that he was competent to participate in the proceedings. (*See* Docket No. 72). Defendant earned a GED and had completed some coursework in accounting/business and computer courses while incarcerated. (Docket No. 72 at 4-5). Defendant averred that he was not under the influence of drugs or alcohol and was not under the care of a physician, therapist, psychologist, psychiatrist, social worker or drug counselor for any ailments which would have affected his ability to understand the proceedings. (*Id*. at 5-6). Defense counsel asserted that her client was competent to participate meaningfully in the hearing. (*Id.*). The Court observed Defendant's demeanor and responses during the colloquy and concluded that he understood the proceedings. (*Id*. at 6). Based on the foregoing, the Court found that Defendant was competent to meaningfully participate and to enter a guilty plea if he chose to do so. (*Id.* at 6).

After ensuring that Defendant was competent to plead, the Court queried Defendant to determine whether he had discussed his case with his attorney and whether he was satisfied with the representation provided by counsel. (*Id*. at 6-7). Defendant answered each question in the affirmative. (*Id*.).

The Court proceeded to advise Defendant of the constitutional rights and protections that he would be giving up by pleading guilty, as well as the statutory penalties associated with the charges against him. (*Id*. at 7-15). Defendant indicated that he understood each of those rights

and still wished to plead guilty. (*Id*. at 15).

In response to the Court's request, government counsel summarized the terms of the agreement on the record, including the parties' stipulations as to the advisory guidelines range. (*Id*. at 13-16). Among other important terms, Government counsel specifically stated that Defendant had "waive[d] the right to file a motion to vacate sentence under Title 28, United States Code, Section 2255 attacking his conviction or sentence and the right to file any other collateral proceeding attacking his conviction or sentence." (*Id.* at 20). Defendant confirmed on the record that he consented to each of the terms contained in the agreement. (*Id.* at 23). The Court then explored the appellate and collateral attack waiver provisions with Defendant in greater detail:

> THE COURT: Even though Ms. King went through the agreement in detail, it's incumbent on me to point out certain portions of this plea agreement letter. I'm going to call your attention initially to Page 3, particularly as to your appeal rights. So if you look at Paragraph 8 and the subparagraphs (a), (b) and (c), that's where I'm going to be focused at this point in time. Mr. Edmonds, do you understand that generally, you or the government would have the right to appeal any kind of a sentence that this Court could impose, but pursuant to Paragraph A8 at Page 3 of the agreement, you have waived some or all of your appeal rights, including the right to take a direct appeal under Title 28, United States Code, Section 1291 or Title 18, United States Code, Section 3742, subject to the exceptions that are spelled out in the plea agreement. Do you understand that, sir?
>
> THE DEFENDANT: I do, Your Honor.
>
> THE COURT: Let's look in detail at those exceptions. They start at Subparagraph (a). (a) Do you understand that these exceptions permit you to appeal your sentence only if, No. 1, the United States appeals your sentence; (b) if the sentence exceeds the applicable statutory limits set out in the United States Code, or, the sentence unreasonably exceeds the

guideline range determined by the Court under the sentencing guidelines; or (c) you may take a direct appeal from your conviction or sentence limited to the following issues. (1) the issue specifically raised in the defendant's motion to suppress evidence and the district court's order denying in part the defendant's motion; and, (2) any determination by the Court at sentencing that the defendant is an armed career criminal pursuant to Title 18, United States Code, Section 924(e). If you take a direct appeal raising either issue and you prevail in the appeal, you may, if you prevail on the suppression issues, withdraw your guilty plea, or, if you prevail with respect to the armed career criminal issue, seek resentencing before the Court. If you do not take a direct appeal or you do not prevail in the appeal, the plea of guilty and/or the sentence shall stand. Do you understand all that?

THE DEFENDANT: Yes, ma'am.

THE COURT: So, to repeat, by these provisions of the plea agreement which are at (a), (b), and (c) at Paragraph 8 on Page 3, you are giving up certain rights on appeal and you're permitted to appeal only those issues that are expressly spelled out that I just reviewed with you and that are in this letter. Do you understand that?

THE DEFENDANT: I do, Your Honor.

THE COURT: Further, do you understand that pursuant to Paragraph A8 at Pages 3 and 4, now I'm looking at the bottom of the page, I'm going over to the top of the page, and I'm specifically looking at the paragraph that begins: Jan Michael Edmonds further waives the right to file a motion to vacate sentence. Do you see where I am?

THE DEFENDANT: Yes, ma'am.

THE COURT: Pursuant to that language of the plea agreement, you've also waived your right to file a motion to vacate sentence under Title 28, United States Code, Section 2255 attacking your conviction or sentence and the right to file any other collateral proceeding attacking your conviction or sentence. Do you also understand that, sir?

THE DEFENDANT: Yes, ma'am.

> THE COURT: So all together, you have limited rights to an appeal. Now, I trust that Ms. Sims has reviewed with you what your appeal rights are and what you're waiving. Is that true?
>
> THE DEFENDANT: She has, Your Honor.
>
> THE COURT: So, you understood that discussion with her?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: So you understand that your rights as to appeal are limited?
>
> THE DEFENDANT: I do, Your Honor.
>
> THE COURT: You should also understand that waivers of appeal are generally permissible if they're entered into knowingly and voluntarily, unless they would somehow work a miscarriage of justice. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Now, I've examined the record in your case and, as you know, since we've had prior proceedings, I have quite a bit of information about your case. I've seen you here in court, I've heard all of your responses to my questions, seen your interactions with counsel, and at this point in time, I don't find any bases to invalidate your waivers in this case. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.

(*Id*. at 24-26). Defendant stated that he understood and agreed to each of the terms set forth in the plea agreement and was satisfied with the agreement that he had reached with the Government. (*Id*. at 6, 24-27, 44). Defendant advised that he understood that if he went to trial, it was the Government's burden to prove all of the elements of the offense beyond a reasonable doubt including that the firearm was "possess[ed] in or affecting interstate commerce" and he later agreed with the prosecution's summary of the evidence against him including that the "firearm

10

was determined to have traveled in interstate commerce." (*Id.* at 35, 37-38). Defendant acknowledged that he was waiving his trial rights by pleading guilty as well as "giving up defenses that [he] might have had to the offenses charged, including defenses or challenges to the indictment based on the Constitution." (*Id.* at 13). Defendant also told the Court that his guilty plea was the product of his own volition and denied that he had been threatened or forced to plead guilty or that anyone had made him any promises as to what his actual sentences would be, outside of the plea agreement. (*Id.* at 40).

In this Court's estimation, the record before the Court, including the fully executed written plea letter and Defendant's assertions under oath at the change-of-plea hearing, conclusively establish that he knowingly and voluntarily agreed to waive his rights to collaterally attack his conviction and sentence. See *Mabry*, 536 F.3d at 242; *Fazio*, 795 F.3d at 425.

### B. Miscarriage of Justice

Having determined that the waiver was knowing and voluntary, the Court must next consider "whether enforcement [of the waiver] would work a miscarriage of justice" under the facts of this case. *Mabry*, 536 F.3d at 237. In so doing, the Court applies a "common sense approach" that takes into account "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting that error on the government, and the extent to which the defendant acquiesced in the result." *Id*. at 242-43 (internal citations and quotations omitted). "Courts apply the miscarriage of justice exception sparingly and without undue generosity, but with the aim of avoiding manifest injustice." *United States v. Mitchell*, 538 F. App'x 201, 203 (3d Cir. 2013) (citing *Khattak*, 273 F.3d at 563).

11

In his Motion, Defendant raises a number of related challenges to his conviction and sentence, most of which rely on his position that the Court lacks subject matter jurisdiction over the § 922(g)(1) offense to which he pled guilty. (Docket Nos. 98; 99). He contends that because the Court lacks subject matter jurisdiction over the matter that his counsel was ineffective for failing to file a motion to dismiss the Indictment on this basis; that her alleged ineffectiveness created a conflict of interest undermining the advice she provided to him in this case; and that the Government purportedly committed prosecutorial misconduct by pursuing the Indictment against him despite the Court's lack of jurisdiction. (*Id.*). Defendant also suggests in cursory fashion and without supporting authority that his appointed counsel operated under a conflict of interest because of the fact that she was appointed by the Court to represent him. (*Id.*). In response, the Government contends that Defendant's claims are barred by the collateral attack waiver in the plea agreement; procedurally defaulted as the jurisdictional claims were not raised on direct appeal; and/or otherwise without merit. (Docket No. 102). After careful consideration of the parties' positions, the Court agrees with the Government that none of the issues raised by Defendant are of the type that would result in a miscarriage of justice in this case if the collateral attack waiver was enforced and the Court will enforce the broad waiver in this case which encompasses all of the issues that have been raised by Defendant. *See United States v. Hampton*, 351 F. App'x 723, 728 (3d Cir. 2009) (valid appellate waiver precluded review of jurisdictional challenge to § 922(g)(1) charge).

Although the Government raises a host of different issues in opposition, the Court focuses on the fundamental flaw in Defendant's motion wherein he argues that the Court lacks subject matter jurisdiction over the § 922(g)(1) charge. (Docket Nos. 98; 99). To the contrary,

well-established and binding precedent of the Third Circuit, namely *United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001), holds that 18 U.S.C. § 922(g)(1) is a valid exercise of Congress' commerce clause power and that district courts have subject matter jurisdiction over charges brought under the statute. *See United States v. Benjamin*, 711 F.3d 371, 381 (3d Cir. 2013) ("Benjamin argues that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to him under the Commerce Clause in order to preserve the issue for Supreme Court review. He correctly recognizes that his constitutional arguments are foreclosed by our precedent in *United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001). Therefore, we need not discuss his constitutional challenges any further."). Further, "the transport of a weapon in interstate commerce, however remote in the distant past, gives its present intrastate possession a sufficient nexus to interstate commerce to fall within the ambit of the statute." *Singletary*, 268 F.3d at 200. In light of this precedent, any pretrial motion arguing that the Court lacked jurisdiction would have been denied, undermining any prejudice to Defendant by the asserted failure to file such a motion. *See United States v. Moorefield*, Crim. No. 14-284, 2015 WL 3879934, at *6 (W.D. Pa. Jun. 23, 2015) (denying motion to dismiss Indictment challenging interstate commerce element of § 922(g)(1)). Hence, Defendant's appointed counsel could not have been ineffective for failing to pursue a motion to dismiss of such dubious merit and no conflict of interest arose as a result of the alleged ineffectiveness. *United States v. Tindal*, Civ. A. No. 11-634, 2011 WL 1004557, at *3 (E.D. Pa. Mar. 18, 2011) ("Any failure to pursue or raise a meritless claim to the contrary cannot constitute ineffective assistance of counsel."). Similarly, the Government did not commit prosecutorial misconduct by pursuing the Indictment against Defendant under these circumstances, i.e., by prosecuting Defendant for committing an offense in violation of federal law in a manner that has

been upheld by the Court of Appeals.  *See United States v. Kiger*, Crim. No. 08-14, 2011 WL 3809949, at * (W.D. Pa. Aug. 26, 2011) ("in order to succeed on [a § 2255 claim based on prosecutorial misconduct], a defendant must prove that Government counsel engaged in misconduct and that such misconduct directly affected the defendant's sentence.").

Notwithstanding the foregoing, the record reveals that Defendant affirmatively waived any jurisdictional challenges to the Indictment by entering his guilty plea and did so fully understanding that he was waiving any rights or defenses to the allegations in the Indictment. (*See* Docket No. 72 at 13 (Defendant acknowledged that by pleading guilty he was "giving up defenses that [he] might have had to the offenses charged, including defenses or challenges to the indictment based on the Constitution.")).  Additionally, the Indictment expressly alleges that Defendant "knowingly possessed in and affecting interstate commerce" the firearm and ammunition. (Docket No. 1).  During the Court's comprehensive plea colloquy, Defendant stated that he understood that interstate commerce was a necessary element of the offense required to be proven by the Government at trial beyond a reasonable doubt, that he was waiving his right to a trial and he also accepted the Government's proffer that the ammunition and firearm in fact traveled in interstate commerce.   (*See* Docket No. 72).  All told, Defendant has not raised any non-frivolous issues that were not covered by the valid waiver in his plea agreement with the Government.

Finally, Defendant cites no authority for the proposition that the appointment of an Assistant Federal Public Defender to represent him establishes a conflict of interest sufficient to set aside his conviction and/or sentence because his counsel was an "officer of the court." (Docket Nos. 98; 99).  As Defendant was indigent, the appointment of counsel of his behalf was

14

made consistent with 18 U.S.C. § 3006A(g)(2)(A) and this Court's CJA Plan. (Docket Nos. 12, 16). Given Defendant's *pro se* status, the Court further notes that all lawyers who appear before the Court are considered "officers of the court" because they are bound by the Rules of Professional Conduct to act ethically during the course of judicial proceedings. *See e.g.* PA ST RPC Rule 3.3, n.2 ("This Rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process."); n. 5 (The duty of candor to the court "is premised on the lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence."). Therefore, absent some additional factual and legal basis supporting the alleged conflict of interest by the Assistant Federal Public Defender, Defendant cannot meet his heavy burden to demonstrate ineffective assistance of counsel on these grounds. *See Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland's* high bar is never an easy task.").

For all of these reasons, the Court finds that no miscarriage of justice will result from enforcement of the collateral attack waiver set forth in the parties' plea agreement. *See Mabry*, 536 F.3d at 237. Accordingly, Defendant's Motion must be denied.

V. **CONCLUSION**

Based on the foregoing, Defendant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is denied, with prejudice. The Court also holds that Defendant has failed to make a substantial showing of the denial of a Constitutional right and is not entitled to a certificate of appealability. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: January 18, 2017

cc/ecf: All counsel of record
Defendant Jan Michael Edmonds, *pro se*
#68695-066
Hazelton FCI
P.O. Box 5000
Bruceton Mills, WV 26525